# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**UNITED STATES OF AMERICA**

**v.**                                        **NO. 4:06CR00041 GTE**

**ANTOINE DEMETRIS BAKER**

## <u>ORDER</u>

The Defendant, Mr. Antoine Baker, moves the Court pursuant to the All Writs Act and the Declaratory Judgment Statute to declare the Attorney General's appointment of Mr. Tim Griffin to serve as U.S. Attorney for the Eastern District of Arkansas "unconstitutional under U.S. Const., Art. II, § 2, cl. 2-3, or violating 28 U.S.C. § 541(a-b), or both."[1]  In addition, the Defendant contends the position of the United States Attorney "is a Presidential appointment not an Attorney General's appointment."[2]

## I.  Background

The Defendant, Mr. Baker, is charged in this case with federal capital murder.  The Superseding Indictment filed August 9, 2006, alleges a capital crime with aggravating circumstances.  The original Indictment and the First Superseding Indictment filed August 9, 2006, were handed down by a grand jury during the tenure of Mr. Bud Cummins, the United States Attorney for the Eastern District of Arkansas.  On December 20, 2006, Mr. Cummins resigned, thereby creating a vacancy in the office, and on the same day the Attorney General, Alberto Gonzales, appointed Mr. Griffin as Interim United States Attorney.  As of the time of this opinion, Mr. Griffin's name has not been submitted to the Senate.  Nevertheless, the

---

[1] *See* Defendant's Motion to Declare U.S. Attorney's Appointment Unconstitutional or in Violation of 28 U.S.C. § 541(a-b), or Both (hereafter "Defendant's Motion"), p. 1.

[2] *Id.*

Government's Response states, "As the Attorney General has made clear, however, the

Executive Branch is committed to having a Senate-confirmed United States Attorney for all 94

federal districts, and there is every intention of submitting a name for this United States Attorney

position to the Senate for confirmation."[3]

On February 7, 2007, a Second Superseding Indictment was handed down by the Grand

Jury and notice thereof submitted pursuant to 18 U.S.C. § 3593(a).[4]

The original Indictment filed February 8, 2006, was signed by the Foreperson of the

Grand Jury and also by Assistant U.S. Attorney, Patrick Harris. The First Superseding

Indictment was filed August 9, 2006. It also was signed by the Foreperson and Mr. Harris. Both

---

[3]*See* United States' Opposition to Defendant's Motion to Declare U.S. Attorney's Appointment Unconstitutional (hereafter "Government's Response"), p. 3. Mr. Griffin has recently stated publicly that he will not seek to have the President nominate him to serve as Mr. Cummins' successor in the Office of U.S. Attorney for the Eastern District of Arkansas. The Court assumes that Mr. Griffin intends to serve as interim U.S. Attorney until Mr. Cummins' successor is nominated by the President, confirmed by the U.S. Senate and then appointed by the President.

[4]The pertinent portion of 18 U.S.C. § 3593(a) states:

(a) Notice by the government. If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice --
> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

were filed during Mr. Cummins' tenure and the signature line for the government's attorney shows Mr. Cummins' name as the then United States Attorney, but was signed only by Mr. Harris for the Government. The Second Superseding Indictment was filed on February 9, 2007. Again, it was signed by the Foreperson and by Mr. Harris under Mr. Griffin's name, who by that date was serving as Interim U.S. Attorney. It appears that the case is proceeding under the direction of Mr. Harris.[5]

The Defendant does not challenge the original Indictment or the First Superseding Indictment. However, he challenges the Second Superseding Indictment issued during the tenure of the Interim United States Attorney, Mr. Griffin.[6]

In his original motion, Defendant states his position as follows:

Griffin is the United States Attorney for the Eastern District of Arkansas and his name has not been, and likely will never be, submitted to the United States Senate for "advice and consent" as required by Art. II, § 2, cl.2 (with cl.3, collectively the "Presidential Appointments Clauses", quoted in ¶ 22, *infra*). Therefore, his appointment by the Attorney General, albeit under 28 U.S.C. § 546(c), as amended in March 2006, still does not obviate application of 28 U.S.C. § 541(a), and it violates the Presidential Appointments Clause of Art. II of the Constitution. Therefore, he cannot hold the office of U.S. Attorney.

---

[5]The Court takes note that Assistant U.S. Attorney Karen Whatley entered her appearance in this case on November 20, 2006.

[6]In his Reply, Defendant states:

The prosecution is valid, and defendant has not said otherwise. This is not a motion to dismiss the indictment or prevent the prosecution, except to attempt to prevent application for the death penalty by an unauthorized U.S. Attorney. The question here is Mr. Griffin's authority to act as U.S. Attorney at all.

*See* Defendant's Reply to Government's Opposition (hereafter "Defendant's Reply"), p. 1. Still, it does appear that the Defendant is challenging the validity of the Second Superseding Indictment filed under Mr. Griffin's tenure.

Defendant takes three related approaches: First, even considering § 546(c) as an attempted "end run" around the Presidential Appointments Clauses, defendant submits that § 541(c) must still control to prevent an obvious absurdity enabled by the law, and Mr. Griffin's name still has to be submitted to the Senate. Second, the failure or refusal to submit his names means he holds his office in violation of the Presidential Appointments Clauses. Third, under the Constitution, only the President can appoint a U.S. Attorney, not the Attorney General, so this appointment is void.[7]

The Court concludes that Defendant does not have Article III standing to challenge the legality of Mr. Griffin's appointment; that 28 U.S.C. § 546 is not facially unconstitutional; and that his "as applied" challenge is not ripe for review. Ordinarily, the conclusion that Defendant lacks standing would make it unnecessary for the Court to reach and deal with the underlying constitutional questions. Nevertheless, out of an abundance of caution and in light of Defendant's status as one charged with a capital crime and who therefore may face the death penalty, the Court will address the constitutional issues raised by the Defendant.

## II. Analysis

### A. Standing

The Defendant contends that he has Article III standing to raise this issue because the federal government is seeking to take his life, "and an illegally appointed United States Attorney . . . will be involved in this case."[8] He attacks the constitutionality of 28 U.S.C. § 546(a-c) stating, "Because § 546(c) permits the Attorney General to appoint a U.S. Attorney [it] is unconstitutional under Article II, § 2, cl. 2."[9]

---

[7] *See* Defendant's Motion, pages 1, 2.

[8] *See* Defendant's Motion, p. 14.

[9] *See* Defendant's Motion, p. 10. It should follow that Defendant would also contend that the previous version of § 546, permitting the Attorney General to appoint a U.S. Attorney would

The Government responds:

That appointment was plainly lawful, and Defendant's arguments to the contrary lack merit. It cannot be disputed that Mr. Griffin's appointment was expressly authorized by section 546. The appointment was also entirely Constitutional. Because United States Attorneys are "inferior officers," the Appointments Clause of the Constitution expressly permits Congress to vest their appointment in the Attorney General, and does not require the advice and consent of the Senate before they may be appointed. And Mr. Griffin's interim appointment does not in any way undermine the President's power under the Recess Appointments Clause, because the President remains free to effect the removal of Mr. Griffin, like any interim United States Attorney, and thereafter to make a recess appointment (assuming such an appointment is otherwise permissible). Mr. Griffin's appointment pursuant to Section 546 therefore does not inhibit the President's power under the Recess Appointments Clause in any manner.

The Attorney General's appointment of Mr. Griffin was therefore plainly lawful. But this Court need not reach that question because Defendant's motion fails for an entirely independent reason: It is well-established that a court cannot dismiss an indictment issued under a United States Attorney whose appointment was allegedly infirm. *See, e.g., United States v. Gantt,* 194 F.3d 987, 998 (9th Cir. 1999). Thus, even if Mr. Griffin's appointment were improper (it is not), under well-settled authority Defendant is not entitled to have the indictment dismissed..[10]

The Government argues that the Defendant has no standing to challenge Mr. Griffin's appointment as Interim U.S. Attorney because none of his rights as the Defendant in this criminal case are compromised or adversely affected by that appointment. The law does not require U.S. Attorneys to sign indictments in any criminal case, capital or otherwise. The law simply requires that the indictment must be signed "by an attorney for the government." *See* Fed. R. Crim. P.

---

likewise be unconstitutional. If not, then Defendant would apparently acknowledge that an Attorney General would have the authority to appoint a person to serve as Interim U.S. Attorney for some limited period of time such as 120 days. Mr. Griffin was appointed on December 20, 2006. April 19, 2007, would be the 120th day after the appointment. But, Defendant appears to be satisfied with the 148 year old (pre-2006 amendment) version of § 546, calling it "one that worked perfectly well." *See* Defendant's Reply, p. 3.

[10]*See* Government's Response, pp. 1-2.

7(c)(1). Furthermore, all U.S. Attorneys are subject to the direction of the Attorney General, and this authority is nowhere more clearly apparent than in the processing of capital cases that permit the government to seek the death penalty, as here. Indeed, the Defendant's own motion cites many of the provisions of the U.S. Attorney's Manual which clearly spell this out.[11] The Defendant likewise notes the case of *U.S. v. Lee*, 274 F.3d 485 (8th Cir. 2001), which arose in this Court, and made it clear that accused defendants have no enforceable rights based upon the Department of Justice's in-house death penalty protocols.

The Defendant states that "[t]his is not a motion to dismiss the indictment or prevent the prosecution, except to attempt to prevent application for the death penalty by an unauthorized U.S. Attorney."[12] But nothing prevents an Assistant U.S. Attorney from making the necessary preliminary communications to the Attorney General when it must be recognized that, in any event, the Attorney General, or in some cases, the Deputy Attorney General, has the final say when deciding whether to seek the death penalty or when to permit the government's attorney to withdraw a death penalty request previously authorized.[13] From the filing of the First Superseding Indictment on August 9, 2006, the predicate for seeking the death penalty had been established. And, the Department of Justice rules require in such circumstances, that the death penalty issue be submitted to the Attorney General for his final decision whether the U.S. Attorney desires to seek, or not to seek, the death penalty. Indeed, the Attorney General, and in his absence, the Deputy Attorney General, can <u>require</u> the U.S. Attorney to seek the death penalty

---

[11] *See* Defendant's Motion, pp. 11-13 (citing U.S. Attorney's Manual §§ 9-10.020 –.040).

[12] *See* Defendant's Reply, p. 1.

[13] *See Lee*, 274 F.3d at 489.

or to continue to pursue same, even when that U.S. Attorney disagrees.[14]

So, the identity of the U.S. Attorney or Interim U.S. Attorney for the Eastern District of Arkansas has no effect on any death penalty decision that may be made in his case. Nor does it affect any of his other rights as the Defendant in this case.

In *United States v. Suescun*, 237 F.3d 1284, 1287-88 (11th Cir. 2001), the court stated:

> A district court lacks jurisdiction to entertain a criminal case if it appears that the Government "lacked power to prosecute the defendant." *United States v. Fitzhugh,* 78 F.3d 1326, 1330 (8th Cir. 1996). An appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute. In *Fitzhugh*, for example, the Eighth Circuit held that an indictment obtained by an Independent Counsel who may have exceeded his authority did not affect the government's power to prosecute and thus did not deprive the district court of jurisdiction. *Id.; accord United States v. Easton,* 937 F.2d 160, 162 (5th Cir. 1991) (holding that the district court's jurisdiction was not affected even though the assistant United States Attorney who signed the indictment had been directed to do so by a United States Attorney who was disqualified to participate in the prosecution of the case); *United States v. Coppola*, 526 F.2d 764, 772-73 (10th Cir. 1975) (implying that the presence of a Department of Justice "special attorney" in the grand jury room, in violation of Fed.R.Crim.P. 6(d), did not raise a jurisdictional issue). In sum, even if we were to assume that Keefer's appointment as temporary United States Attorney was invalid - because it was not made in conformance with the Appointments Clause – we conclude that the appointment did not deprive the district court of jurisdiction to entertain the case and to adjudicate Suescun guilty of the charged offenses.

Furthermore, a declaration that 28, U.S.C. § 546(c), as amended in 2006, is unconstitutional and invalid would not affect the legality of Mr. Griffin's appointment because in that event his appointment would be authorized by the prior version of that law. If § 546, as enacted in 2006, were held to be unconstitutional, as contended by the Defendant, then the pre-2006 version would automatically be in effect and control the appointment of "interim" U.S. Attorneys. *See* 1 Norman J. Singer, *Effects of Holding Legislation Invalid*, Sutherland Statutory

---

[14]*Id.*

Construction § 2:7 (6th ed. 2006) and cases cited therein. *See, e.g.*, *State Ex Rel Burns v. Steely*, 600 P.2d 367, 368-69 (Okla. Crim App. 1979) ("An unconstitutional act designed to amend or supercede an existing law does not repeal or change the former valid act but leaves it in full force and effect."); *Boling v. State*, 74 Wash. 2d 82, 89 (Wash. 1968) ("The elementary rule of statutory construction is without exception that a void act cannot operate to repeal a valid existing statute and the law remains in full force and operation as if the repeal had never been attempted.")

The result: Mr. Griffin's appointment by the Attorney General would still be valid and in effect until 120 days after December 20, 2006, that is until April 19, 2007. Therefore, the filing of the Second Superseding Indictment in February 2007 would have been made during the tenure of a validly appointed interim U.S. Attorney.

Finally, the appointment of Mr. Griffin does not violate the Recess Appointment Clause, Art. II, § 2, cl. 3. The Recess Appointment power is in the President, not the Attorney General, whereas the Attorney General has the power to make interim appointments. It is true that a recess appointment depends upon the existence of a vacancy. But even assuming that an interim appointment has been made by the Attorney General and there is, therefore, no vacancy, the power of the President to make a recess appointment is not affected. The Court agrees with the following analysis made by the Government:

> Assuming *arguendo* that, following the appointment of an interim United States Attorney, there is no longer a "vacancy" as that term is used in the Recess Appointments Clause, it has long been established that the President may exercise the Recess Appointments power by first effecting the removal of the interim United States Attorney, and then making a recess appointment. Examining section 541(c), which authorizes the President to remove "each" United States Attorney, the court in *Solomon* held that Congress conferred upon the President the

authority to remove any United States Attorney without regard to the manner in which s/he was appointed. 216 F. Supp. at 843; *see* 3 Op. Off. Legal Counsel 448 (1979) (opining that when Congress acts under its Constitutional authority to vest the power of appointing inferior officers in the President, heads of departments, or the courts, it can also regulate the manner for the removal of those officers appointed by department heads or the courts, and adopting statutory construction analysis employed by court in *Solomon* to conclude that President has power to remove interim United States Attorneys). And because the President can remove an interim United States Attorney at any time and replace him or her with a Recess Appointment, section 546 does not encumber in any way the President's exercise of power under the Recess Appointments Clause.[15]

The Court also agrees that the Defendant does not have standing to raise this Recess Appointment issue.  As stated by the Government:

> Defendant does not have standing to raise this argument. The primary purpose of the Recess Appointments Clause is to permit the continued operation of the government in the event that offices are vacant during the recess of the Senate (that is, to enable the President to execute his duties notwithstanding a recess). Defendant simply does not fall within the "zone of interests" that the Recess Appointments Clause is designed to encompass. *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 751 (1984).[16]

**B.  Facial and "As Applied" Challenge**s

As a general rule United States Attorneys are nominated by the President and, if confirmed by the Senate, are then appointed by the President for a term of four years. 28 U.S.C. § 541(a-b).[17]  However, in the event that the office of the United States Attorney becomes vacant, the Attorney General is given the authority to appoint an Interim United States Attorney. Specifically, 28 U.S.C. § 546 provides:

---

[15]Government's Response, pp. 14-15.

[16]Government's Response, p. 14 n.4.

[17]  The record does not reveal if Mr. Cummins' four year term was completed, but, even if it were, Mr. Cummins, having been appointed and confirmed under §541, would ordinarily continue to serve until his successor was qualified under that same section of the law.

(a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.

(b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

(c) A person appointed as United States attorney under this section may serve until the qualification of a United States Attorney for such district appointed by the President under section 541 of this title.

28 U.S.C. § 546 is entitled "Vacancies." This particular version was enacted in March, 2006. It is part of the USA Patriot Improvement and Preauthorization Act of 2005, Pub. L. No. 109-177, § 502, 120 Stat. 192, 246 (2006).[18] That Act captions the current § 546 as "Interim Appointment of United States Attorneys." Before the 2006 change the pertinent statutory language read:

(c)  A person appointed as United States attorney under this section may serve until the earlier of ---

(1)  the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or
(2)  the expiration of 120 days after appointment by the Attorney General under this section.

(d)  If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of court.

Noting that § 546, as it existed prior to the 2006 amendments, passed constitutional muster both under the Appointment Clause and the Separation of Powers Doctrine, the Court must accept that Congress has the legislative power to give the Attorney General the authority to

---

[18]  28 U.S.C. § 546(b) has no applicability because Mr. Griffin's name has never been submitted to the Senate by the President for its "advice and consent."

appoint "interim U.S. attorneys" who may serve for at least 120 days and also has the authority to

authorize the district courts to thereafter make such appointments if the President had not

appointed someone to fill that vacancy and the Senate had not confirmed that appointment before

the expiration of the 120 day period. So, there is no flat-footed prohibition on Congress' power

to authorize the Attorney General to make interim appointments without obtaining the advice and

consent of the Senate. But does that congressional power have no temporal limits? The

Government in its Response appears to take this position. It states in footnote 6, page 16:

> Even if Defendant's claim presented a controversy within the meaning of Article III, it would fail. Congress has chosen in section 546 not to impose a temporal limit on the tenancy of the Attorney General's interim appointee. Because United States Attorneys are inferior officers, the Constitution permits Congress to delegate their appointment to the Attorney General as a general matter, and does not require that they be confirmed. Therefore, the lengthy service of an interim appointee raises no concerns from a Constitutional perspective. Squarely faced with an interim United States Attorney appointee who had served for over six years, the First Circuit upheld against an as-applied Constitutional attack the now-repealed section 546(d) (2005) – which similarly contained no length-of-service restriction with respect to the interim United States Attorney appointments of district courts – reasoning that the length of the interim appointment posed no Constitutional concern given Congress' constitutional authority to vest the appointment to the district court as a general matter. *Hilario*, 218 F.3d at 21, 29.[19]

The *Hilario* case presents a different issue than the one before this Court. In the *Hilario*

case, the Attorney General's appointment of an Interim U.S. Attorney was effective for only 120

days.[20] Since the Attorney General's appointment expired without the President nominating or

the Senate confirming any presidential appointment (under § 541), § 546(d) provided that

thereupon "the district court for such district may appoint a U.S. Attorney to serve until the

---

[19]*See* Government's Response, pp. 16-17 n.6 (emphasis added).

[20]*United States v. Hilario*, 218 F.3d 19, 23 (1st Cir. 2000).

vacancy is filled."[21]  That is what happened there.  And, the district court appointee served for

over six years.  *Hilario* approved this.  Does this mean that Congress can give the Attorney

General the power to appoint an interim U.S. Attorney without any temporal limitation?

In *Hilario,* the Court first dealt with the statutory scheme and found the language clear:

> The court below determined that, by holding office for so long a period, Gil had
> become the de facto United States Attorney without having to run the gauntlet
> prescribed in section 541(a). *See Peralta-Ramirez,* 83 F. Supp. 2d at 269. This
> rendered his continuing service unlawful, the court concluded, because Congress
> could not have intended to allow an interim appointee to serve as United States
> Attorney for upwards of six years - an interval that far exceeds the statutory term
> for a regular United States Attorney - without being nominated by the President
> and confirmed by the Senate. *See id.* at 271. We disagree with this conclusion.

> The language of an unambiguous statute typically determines its meaning.

> * * *

> The language of section 546(d) is direct and to the point. In contrast to section
> 546(c)(2), which limits the Attorney General's interim appointment to a
> maximum of 120 days, section 546(d) specifies that the court's interim appointee
> shall "serve until the vacancy is filled." There is no limit on the duration of this
> service (other than the nomination and confirmation of a regular United States
> Attorney). The absence of any temporal limit strikes us as deliberate, rather than
> serendipitous, especially in view of the contrast between adjacent sections of a
> single statute. *See King v. St. Vincent's Hosp.,* 502 U.S. 215, 218-21, 112 S. Ct.
> 570, 116 L. Ed. 2d 578 (1991). This construction becomes irresistible when one
> considers that Congress did not give the President a deadline before which he
> must "appoint, by and with the advice and consent of the Senate, a United States
> attorney for each judicial district." 28 U.S.C. § 541(a).

> These two pieces of the statutory scheme fit together tongue and groove. In such
> circumstances, it is the court's role to give effect to plain meaning rather than to
> decide whether some other formulation might have been preferable as a matter of
> policy. Consequently, we decline Hilario's invitation to rewrite the statutory
> scheme by inserting a temporal limit into either of the two provisions we have
> mentioned. Instead, we read section 546(d) forthrightly to allow a judicial
> appointee to serve until the vacancy is filled, whenever that may be.

---

[21]*Id.* at 21.

12

* * *

We add a coda. We recognize that it is counterintuitive for a temporary official to remain in office for so extended a period. If we were writing on a pristine page and wished to devise a template for the appointment of United States Attorneys, we might design it differently. But harboring such doubts "is not to find equivocation in the statute's silence, so as to render it susceptible to interpretive choice." *King,* 502 U.S. at 220, 112 S. Ct. 570. The unvarnished fact is that section 546(d) does not limit the duration of the service of court-appointed interim United States Attorneys. If Congress decides to proscribe the type of long-running interim appointment that has occurred here, it has the means to do so. In the absence of such a restriction, however, we are constrained to hold that Gil's lengthy tenure as the interim United States Attorney does not contradict the statutory scheme.[22]

After establishing that the statute placed no temporal limits on the judicial appointment of interim U.S. Attorneys under old § 546, the *Hilario* court next dealt with the constitutional arguments surrounding the Appointment Clause:[23]

We deal first with the claim that section 546(d) offends the Appointments Clause.

* * *

[T]he Clause makes nomination and confirmation the requisite appointment protocol for what have come to be known as "principal officers" of the United States but allows Congress to permit a limited class of officials to appoint "inferior officers" without the need for confirmation. *See Edmond v. United States,* 520 U.S. 651, 659-60, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997).

Congress has placed the power to appoint interim United States Attorneys in the

---

[22]*Id.* at 23-24.

[23]  The Appointment Clause, Art II, § 2, cl. 2 reads as follows:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

Attorney General and in the district court, successively. *See* 28 U.S.C. § 546. Since the Appointments Clause permits such delegation only for inferior officers, the constitutionality of this section depends, in the first instance, on how United States Attorneys should be classified.

Hilario and the amicus assert that all United States Attorneys are principal officers and therefore must be nominated by the President and confirmed by the Senate. They add that, even if *interim* United States Attorneys are inferior officers, *regular* United States Attorneys are not-and the unusual length of Gil's service has transformed him into a de facto United States Attorney. The government favors a different taxonomy, urging us to categorize all United States Attorneys, howsoever appointed, as inferior officers.

\* \* \*

The Ninth Circuit, when called upon to decide whether the judicial appointment of an interim United States Attorney passed muster under the Appointments Clause, managed to reconcile the two opinions. The court noted that independent counsels are inferior despite limited supervision, and suggested "that supervision by a superior officer is a sufficient but perhaps not a necessary condition to the status of inferior officers." *Gantt,* 194 F.3d at 999 n. 6.

We find this approach persuasive. Accordingly, we conclude that United States Attorneys are to be regarded as inferior officers if their work is "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate," *Edmond,* 520 U.S. at 663, 117 S.Ct. 1573, and, if not, might still be considered inferior officers if the nature of their work suggests sufficient limitations of responsibility and authority, *see Morrison,* 487 U.S. at 671-72, 108 S.Ct. 2597. Measured against those benchmarks, United States Attorneys are inferior officers.

Congress has ceded to the Attorney General plenary authority over United States Attorneys. *See* 28 U.S.C. § 519; *see also id.* § 516 (reserving litigation on behalf of the United States to officers of the Department of Justice "under the direction of the Attorney General"). They are subject to much closer supervision by superiors than, say, the judges of the Coast Guard Court of Criminal Appeals, whom the *Edmond* Court classified as inferior officers "by reason of the supervision [of others] over their work." 520 U.S. at 666, 117 S.Ct. 1573. The Attorney General can remove a United States Attorney from participation in particular cases whenever she believes that it would be "in the interests of the United States" to do so. 28 U.S.C. § 518(b). Indeed, she is empowered to determine the location of a United States Attorney's offices, *see id.* § 545(b), to direct that he file reports, *see id.* § 547(5), to fix his salary, *see id.* § 548, to authorize his office expenses, *see id.* § 549, and to approve his staffing decisions,

*see id.* § 550. Under so pervasive a supervisory regime, United States Attorneys plainly pass the *Edmond* test. *Accord Gantt,* 194 F.3d at 999-1000.

This is not to say that every indicator points in the same direction. For example, as Hilario and his amicus emphasize, the Attorney General does not have the authority to discharge a United States Attorney. But this fact, standing alone, does not tip the balance. Although the "power to remove officers ... is a powerful tool for control," *Edmond,* 520 U.S. at 664, 117 S.Ct. 1573, it is not a necessary adjunct to the exercise of control. In all events, the case law does not require "control" by a superior officer, but only direction and supervision. *See id.* at 663, 117 S.Ct. 1573. Given the Attorney General's broad array of supervisory powers, the absence of the power of removal is not fatal to the government's position in this case. *See Gantt,* 194 F.3d at 1000.

The amicus makes a further point. Historically, the officers who held positions equivalent to that of the modern United States Attorney were quite independent. Therefore, the amicus argues, those officers must not have been the kind that the Framers had in mind when they described "inferior officers." This argument misses the mark. An officer's status as inferior or principal is not absolute, but relative to those around him. If Congress designs a government position in order to provide a supervisor for a group of officers who formerly were independent, those officers become inferior to the new officer. That is precisely what happened here. As it stands now, the law places United States Attorneys under the direction and supervision of the Attorney General. No more is exigible to show that United States Attorneys-and *a fortiori* interim United States Attorneys-are inferior officers.[24]

So, the *Hilario* court found the pre-2006 version of § 546 constitutional even though it permitted interim appointments of indefinite duration.

A different situation existed in the *Gantt* case because the Court there was "forced to reach the merits of Gantt's constitutional challenge" because of the language of 18 U.S.C. § 3731, which specifically requires certification by the U.S. Attorney.[25] The Court explained, "The constitutionality of §546(d) would not affect the validity of indictments, by contrast, as

---

[24]*Hilario*, 218 F.3d at 24-26.

[25]*United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999).

indictments need only be signed by an 'attorney for the government.'"[26] So, the Ninth Circuit had to reach the constitutional question. It did so as follows:

> We are not convinced that Congress' decision to vest appointment of interim United States Attorneys in the district courts violates the Appointments Clause. The Clause requires principal officers to be appointed by the President with the "Advise and Consent" of the Senate. Congress may, however, "vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., Art. II, § 2, cl. 2. Because United States Attorneys are "inferior" officers, § 546(d) passes constitutional muster.

> United States Attorneys are clearly "officers" of the United States. *See Buckley v. Valeo,* 424 U.S. 1, 126, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (an officer is "any appointee exercising significant authority pursuant to the laws of the United States"); 28 U.S.C. § 547 (delineating broad authority of United States Attorney to enforce federal law). Whether they are principal or inferior officers is less obvious.

> The Constitution does not use the term "inferior" "in the sense of petty or unimportant" but in the sense of a subordinate to a principal officer. *Collins v. U.S.,* 14 Ct.Cl. 568, 574 (1878). The Supreme Court has recently reiterated that being an " 'inferior officer' connotes a relationship with some higher ranking officer or officers below the President: whether one is an 'inferior' officer depends on whether he has a superior .... 'inferior officers' are officers whose work is directed and supervised at some level by others who" are principal officers. *Edmond v. U.S.,* 520 U.S. 651, 661-64, 117 S.Ct. 1573, 1580-81, 137 L.Ed.2d 917 (1997).

> * * *

> In light of *Edmond,* we conclude that United States Attorneys are inferior officers.[27]

Thus, the *Gantt* court comes out with the same conclusion reached in the *Hilario* decision.

---

[26]*Id*. (citing Fed. R. Crim. P. 7(c)(1) ("The indictment or information . . . must be signed by an attorney for the government."); *U.S. v. Koreri-Perez*, 47 F.Supp. 2d 164 (D.P.R. 1999) (refusing to consider constitutionality of § 546(d) in motion to dismiss indictment given language of F.R.CR.P. 7(c)(1)).

[27]*Id*. at 998-99.

And, in concluding that U.S. Attorneys are "inferior officers," both courts note the plenary power of the Attorney General over U.S. Attorneys. The Government in its Response at pp. 12-13 accurately summarizes this power:

> The Attorney General is instructed to "supervise all litigation to which the United States . . . is a party, and *shall direct all United States attorneys*, . . . in the discharge of their respective duties." 28 U.S.C. § 519 (emphasis added); *see also id.* § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."). In addition, the Attorney General is empowered to "personally conduct and argue any case in a court of the United States in which the United States is interested," and is granted unfettered discretion to direct "any officer of the Department of Justice" to do so. *Id.* § 518(b); *see also id.* §§ 509 (vesting in Attorney General "all functions of other officers of the Department of Justice"), 526(a)(1) (granting Attorney General authority to investigate acts, records, and accounts of United States Attorneys), 542 (vesting in Attorney General power to hire and discharge Assistant United States Attorneys), 543 (vesting in Attorney General power to hire and discharge special Assistant United States Attorneys), 545(b) (granting Attorney General power to determine location of a United States Attorney's office), 547(5) (granting Attorney General power to direct United States Attorney to file reports), 548 (granting Attorney General power to fix salary of United States Attorney), 549 (granting Attorney General power to authorize United States Attorney's office expenses), 550 (granting Attorney General power to authorize United States Attorney staffing decisions); *McGrain v. Dugherty*, 273 U.S.135, 150 (1927) ("The Attorney General is the head of the department, and its functions are to be exercised under his supervision and direction."); *United States v. San Jacinto Tin Co.*, 125 U.S 273, 279 (1888) ("[A]ll the district attorneys who do bring [suits for the United States] in various courts in the country are placed under his immediate direction and control."). And the Attorney General, in certain enumerated instances, can strip a United States Attorney of jurisdiction over particular cases. *See, e.g.*, *Sutherland v. Int'l Ins. Co. of N.Y.*, 43 F.2d 969, 970 (2d Cir. 1930); § 515(a) (conferring upon Attorney General the power to appoint Special Attorneys to investigate any legal proceeding which a United States Attorney is authorized to conduct).[28]

---

[28]*See* Government's Response, pp. 12-13.

The Court concludes that the Attorney General, under the 2006 version of § 546, has the power

to appoint interim U.S. Attorneys without the advice and consent of the Senate.

The Government also contends that the Defendant's "as applied" constitutional challenge

is not ripe for review.  In its Response to Defendant's Motion, it states:

> Defendant also mounts an "as applied" challenge to operation of 28 U.S.C. §
> 546(c), claiming that Mr. Griffin is not an interim appointee but is rather a *de
> facto* permanent appointee, intended to serve for the entirety of the President's
> term of office, and possibly even longer.  Def.'s Mot. ¶¶ 18, 20. As a result,
> Defendant submits, Mr. Griffin must be submitted to the Senate for advice and
> consent. This "as-applied" challenge is not ripe for review and, in any event, it
> must be rejected on its merits.

> The ripeness doctrine is rooted in the jurisdictional limitations of Article III of the
> Constitution and the policy consideration of efficient court administration. *See In
> re Bender*, 368 F.3d 846, 847-48 (8th Cir. 2004). Article III of the Constitution
> restricts federal courts to resolution of "Cases" and "Controversies," U.S. Const.
> art. III, § 2 . . .
>
>                                     * * *
>
> Defendant's contentions do not present a "Case" or "Controversy" suitable for
> resolution at this time. The circumstances that constitute the basis of Defendant's
> argument are entirely conjectural. Defendant's hypothesis that "Tim Griffin is not
> an 'interim U.S. Attorney'; he is Bud Cummins' permanent replacement until
> January 20, 2009. And, theoretically, if a Republican is elected President in 2008
> and 2012, Mr. Griffin could hold office throughout those terms as well, until
> January 20, 2013," Def.'s Mot. ¶ 20, is pure theory. The Attorney General
> appointed Mr. Griffin less than two months ago.  Defendant has not alleged, nor
> could he, that the President made any statements indicating an intention not to
> nominate a permanent replacement. Indeed, there is every intention of submitting
> a name to the Senate for confirmation. We do not know the outcome of future
> Presidential elections, and even if a Republican is elected in 2008, it does not
> follow that Mr. Griffin will remain the United States Attorney. In short,
> adjudication of this claim would undeniably waste the Court's resources and
> result in the issuance of an advisory opinion, and it must be rejected.

The Court agrees. The 2006 version of § 546 is clearly not facially unconstitutional.  That it

might operate unconstitutionally as applied under some future set of circumstances is insufficient

to render it facially invalid. *See I.N.S. v. Nat'l Center for Immigrants' Rights*, 502 U.S. 183, 188, 112 S. Ct. 551, 555 (1991).

Nevertheless, the Court does not agree that *Hilario,* upon which the Government relies, necessarily supports its argument that there are no temporal limits on the length of service of those interim U.S. Attorneys appointed by the Attorney General under § 546. Still, other considerations, as discussed below, do give added support to that argument.

*Hilario*, indeed, held that an interim U.S. Attorney appointed under old § 546 by the district court (after the Attorney General's appointment ran out in 120 days) could serve "until the vacancy is filled" regardless of how long that might be.[29] In *Hilario*, that period of "interim" service exceeded six years.[30]

However, this Court is not persuaded that the situation here is precisely comparable to that in *Hilario*. To test whether the two situations are comparable, it is necessary to consider the differing implications of the Separation of Powers Doctrine in the two cases.

All acknowledge that U.S. Attorneys serve as part of the Executive Branch of our government and that they are subject to the direction of the Attorney General. So, the question naturally arose under old § 546 whether it was constitutional to place such interim appointment powers in the Judicial Branch.[31] In *Gantt*, the Ninth Circuit held that Congress did, indeed, possess such power.[32] But, in so holding, the court pointed out that such interim appointment

---

[29]218 F.3d at 23.

[30]*Id*. at 21, 23.

[31]*Gantt*, 194 F.3d at 998-1001.

[32]*Id*.

powers were placed first in the hands of the Attorney General who serves under the President in the Executive Branch.[33] Only if a successor U.S. Attorney had not been nominated by the President, confirmed by the Senate, and then appointed by the President within the specified 120 days would there be any need for a court appointment.[34] And, even after a court appointment, per old § 546, that appointee, like all U.S. Attorneys, would serve under the direction of the Attorney General and could be replaced as soon as the President nominated someone whom the Senate would approve. So, even though such court-appointed interim U.S. Attorneys might serve for an indefinite period, the duration thereof was under the control of the Executive Branch. As stated in *Gantt*:

> Moreover, in passing on § 546(d) we consider the purpose of the Appointments Clause as enunciated by a unanimous Supreme Court in *Edmond*-to "prevent congressional encroachment upon the executive and judicial branches." *Edmond*, 520 U.S. at 659, 117 S.Ct. at 1579. The provisions of § 546(d) do not conflict with this purpose. The judicial branch is not required to appoint a United States Attorney; it is simply empowered to do so. More importantly, the President retains the power to replace the court-appointed United States Attorney with an Attorney appointed by the President and confirmed by the Senate.[35]

It can be argued that the Attorney General's indefinite appointments under new § 546 are different from the indefinite appointments by district courts under old § 546 because the prerogatives of the Executive Branch are not significantly limited by old § 546, whereas the role of the Congress, and more specifically the Senate, arguably is compromised if the Attorney General's appointments under new § 546 may be indefinite in duration. This is particularly true

---

[33]*Id.*

[34]*Id.*

[35]197 F.3d at 1000.

when one considers that Congress has required regular U.S. Attorneys to be appointed by the President (not the Attorney General) and confirmed by the Senate.[36]

The Court agrees that the Constitution does not <u>require</u> Congress to make U.S. Attorneys presidential appointees subject to the advice and consent of the Senate, but it permits Congress to do so, and Congress expressed that intent by enacting 28 U.S.C. § 541. Congress also recognized that the process of making presidential nominations and reviewing same by the Senate takes time. Section 546, both the old and the new, was, and apparently is, intended to deal with vacancies in U.S. Attorney's positions that occur before that "normal" process can be completed.

So, to read new § 546 as permitting interim U.S. Attorneys appointed by the Attorney General to serve indefinitely, without the necessity of Senate confirmation, would run squarely up against the provisions of § 541. And such an interpretation could, as a practical matter, have the effect of denying to the Senate its confirmation power. Nevertheless, as explained below, it

---

[36]*See* 28 U.S.C. § 541 which provides:

(a) The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.

(b) Each United States attorney shall be appointed for a term of four years. On the expiration of his term, a United States attorney shall continue to perform the duties of his office until his successor is appointed and qualifies.

(c) Each United States attorney is subject to removal by the President.

The Court notes that only the President, not the Attorney General, can remove a duly appointed and confirmed U.S. Attorney. Note also the language in *Hilario*, quoted above, to wit: "[T]he Attorney General does not have the authority to discharge a U.S. Attorney." 218 F.3d at 25.

is at least doubtful that this circumstance has any constitutional implications because that result expresses Congress' clearly stated intent.

Focusing more directly on this underlying basic question, it is important to ask: under the Appointment Clause could the Congress enact legislation mandating that all U.S. Attorneys be appointed solely by the Attorney General (not the President) and that those appointments not be subject to the advice and consent of the Senate? The Government appears to so contend when it states:

> Because United States Attorneys are inferior officers, the Constitution permits Congress to delegate their appointment to the Attorney General as a general matter and does not require that they be confirmed. (Emphasis added).

Although the present arrangement might result (if no temporal limits are imposed) in de facto U.S. Attorneys serving for lengthy periods without the Senate's confirmation, that possible result is the product of Congress' own making and could be changed by new legislation. If no change is made, should the courts interpret § 541 and new § 546 together, in some strained and forced manner, in an attempt to give effect to both, say by limiting the duration of interim appointments? Such a solution might be within the Court's power if new § 546 were ambiguous. It is not. While a "no time limit" interpretation could leave the Senate without its advice and consent power, the solution, if any is desired, appears to be entirely in the hands of the Legislative Branch.[37] As stated in *United States v. Locke*, 471 U.S. 84, 95-96, 105 S. Ct. 1785, 1793 (1985):

---

[37]*Hilario*, 218 F.3d at 23-24.

But the fact that Congress might have acted with greater clarity or foresight does not give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978). Nor is the Judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result. See *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 98, 101 S.Ct. 1571, 1584, 67 L.Ed.2d 750 (1981). On the contrary, deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that "the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). "Going behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 75, 102 S.Ct. 1534, 1540, 71 L.Ed.2d 748 (1982) (quoting *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977)). When even after taking this step nothing in the legislative history remotely suggests a congressional intent contrary to Congress' chosen words, and neither appellees nor the dissenters have pointed to anything that so suggests, any further steps take the courts out of the realm of interpretation and place them in the domain of legislation.

The Court again notes the representation of the Government that the President contemplates having U.S. Attorneys appointed and serving under § 541 in every district in the nation.  If such expression of intent is carried out in a reasonably timely manner there might be no occasion even to consider the merits of any possible "as applied" challenge.

## Conclusion

The Court holds, in summary, that the Defendant does not have standing to challenge the legality of Mr. Griffin's appointment because the relief requested (a declaration that that appointment is unconstitutional under Article II  § 2 Clause 2, and under 28 U.S.C. § 541 (a-b) or both) would not redress any injury claimed to have been suffered by him, or which might be

suffered by him in the future.  Any illegality or infirmity in the appointment of Mr. Griffin has no

bearing or impact upon the prosecution of the Defendant or upon the legality of any prosecutorial

decision made in the course of that prosecution.

This case does not raise the issue whether Mr. Cummins was "unconstitutionally fired"

by the Attorney General.  The Court accepts his public statement that he made the decision to

resign.[38]  Even assuming that his resignation was forced, as argued by the Defendant, he did in

fact resign.  His resignation created a vacancy which can be filled by an Interim appointment

made by the Attorney General in accordance with the plain language of § 546.  Whether good

policy or not, § 546 clearly expresses the will of Congress that the Attorney General have the

authority to make interim appointments of U.S. Attorneys.  Such appointments do not in any way

interfere with, or undercut, the power of the President under § 541, the Appointment Clause, or

the Recess Appointment Clause.  Mr. Griffin can be removed at any time and a Presidential

Appointment made with the advice and consent of the Senate.[39]  That § 546 can be manipulated

to avoid Senate confirmation under § 541 is simply the consequence of the language chosen by

the Congress.

---

[38]As stated in *Hilario*, *supra*, only the President has the authority to remove a duly
appointed and confirmed U.S. Attorney.

[39]Yesterday, March 14, 2007, the Defendant filed a Supplement to his Motion, which
consists essentially of a digest of e-mails between the White House and the Department of Justice
concerning the plan to replace certain U.S. Attorneys (as published in the Arkansas Democrat-
Gazette).  The Court concludes that the information tendered by Defendant in his Supplement
does not alter, or affect, the Court's rulings.

FOR THE REASONS STATED HEREIN, IT IS THEREFORE ORDERED THAT the Defendant's Motion To Declare U.S. Attorney's Appointment Unconstitutional and in Violation of 28 U.S.C. § 541 (c) or Both (Docket No. 70), be and it is hereby, DENIED.

Dated this 16th day of March, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE